# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MELISSA JOHNSON,**

     **Plaintiff,**

   v.           Case No. 17-CV-415

**CHRISTOPHER SCHMALING,** *et al.,*

     **Defendants.**

## ORDER

  Plaintiff Melissa Johnson is representing herself. She filed a complaint under 42 U.S.C. § 1983 alleging that the defendants violated her constitutional rights. The Prison Litigation Reform Act (PLRA) applies to her case because, although she is currently on active community supervision, she was incarcerated when she filed her complaint. On November 1, 2017, U.S. District Judge Lynn Adelman screened Johnson's complaint and allowed her to proceed on failure-to-protect claims against defendants Racine County Sheriff Christopher Schmaling, Cpt. Douglas Wearing, Lt. Shawn Barker, Sgt. Melissa Moran, and Sgt. Chad Schulman.

  All parties have consented to proceed before a magistrate judge. On June 4, 2018, the defendants filed a motion for summary judgment, which is now fully briefed. For the

reasons explained in this decision, the court will grant the defendants' motion and dismiss this case.

## I. RELEVANT FACTS

The relevant facts are taken primarily from Johnson's response to the defendants' proposed facts (ECF No. 45) and defendants' reply to Johnson's response to the defendants' proposed facts (ECF No. 53). Additional facts are taken from Johnson's declaration in support of her response to the defendants' motion. (ECF No. 46.) The facts are undisputed unless noted otherwise.

Johnson was booked into the Racine County Jail on March 29, 2015; she was transferred out on June 15, 2015. (ECF No. 45 ¶¶ 1, 3.) She returned to the jail from August 7 through 17, September 10 through 14, October 21 through 23, and November 30 through December 11, 2015. (*Id*. at ¶ 4.) At issue in this case are two brief contacts that Johnson had with Angel Cartagena at the jail on June 5 and August 12, 2015.

The jail maintains "incompatible lists" for inmates. (ECF No. 53 at ¶ 33.) These lists are informally referred to as "no-contact lists." (*Id*.) (The court will use the term no-contact list because that is how Johnson refers to it.) Any officer, lieutenant, sergeant, or captain at the jail can place an inmate on another inmate's no-contact list at the request of an inmate or jail staff. (*Id*. at ¶ 34.) According to the defendants, no-contact lists are primarily used for housing purposes to make sure inmates with restraining orders or a history of disputes or misbehaviors are not housed in the same dayroom. (*Id*.)

2

Male and female inmates are housed on separate floors and have no scheduled day-to-day contact, although they may come into contact while being transported on elevators or when at intake while they wait to be taken to court. (ECF No. 53 at ¶ 35.) Male and female inmates may also come into contact at the felony holding tank at the Racine County Circuit Court when they are awaiting appearances at trial. (*Id.*)

Cartagena raped Johnson in 2002, but he was not arrested for that crime until 2013, after authorities collected his DNA following his arrest on unrelated charges. (ECF No. 46 at ¶ 29.) Both Cartagena and Johnson were incarcerated at the jail in June 2015. According to Johnson, she had heard that Cartagena was in the jail and feared seeing him, so she wrote several grievances to Wearing, Barker, Moran, Schulman, and Schmaling asking that they enter a no-contact order between her and Cartagena. (ECF No. 53 at ¶ 37.) She also asserts that she spoke to Moran, who "brushed [her] off and told [her] it would never happen" because she and Cartagena "would never be in the same area in the Jail." (ECF No. 46 at ¶ 4; ECF No. 53 at ¶ 37.)

According to the defendants, on June 5, 2015, a bail/bond hearing was scheduled in Cartagena's case and, coincidentally, a bail/bond hearing was scheduled in Johnson's case that same day. (*Id.* at ¶¶ 41, 42.) As a result, both inmates were placed on a list of inmates to be transported to the Racine County Circuit Court. (*Id.*) At that time, neither Johnson nor Cartagena appeared on the other's no-contact list. (*Id.* at ¶ 47.)

Johnson explains that, on that day, she was riding in the elevator with two other female inmates and an escorting officer when the elevator stopped to let others on. (ECF No. 46 at ¶ 8.) Cartagena got on the elevator with five or six other male inmates and an escorting officer. (*Id.*) Johnson states that Cartagena "stood so close to [her] body and face [she] could feel his breath on [her] skin." (*Id.*) Cartagena did not say anything to Johnson or touch her while on the elevator; however, Johnson asserts that, after they arrived at court, they were placed in adjoining holding cells, where he called her names and threatened her. (*Id.*)

Shortly after the elevator ride, the transport officer who was with Johnson in the elevator (neither party has identified this individual) contacted officer Cynthia Castaneda (who is not a defendant) and told her that Johnson had been transported in the same elevator as her rapist. (ECF No. 45 at ¶ 46.) Castaneda placed Cartagena on Johnson's no-contact list and called Melissa Olsen (who is not a defendant) in mental health to request that she go see Johnson about the elevator encounter. (*Id*. at ¶¶ 46, 48.) The defendants assert that none of them were involved in the elevator encounter, and Schmaling, Wearing, Barker, and Schulman do not remember ever being made aware of the encounter. (*Id*. at ¶ 50.) Moran asserts that she did not learn about the elevator encounter until a couple of months later. (*Id*. at ¶ 51.)

On August 12, 2015, Cartagena was removed from his housing unit to be taken to court for his trial. (ECF No. 53 at ¶ 54.) Because she was scheduled to testify at Cartagena's

4

trial, Johnson was also removed from her housing unit to be taken to court. (*Id*. at ¶ 55.) They both had to pass through intake at the jail before being escorted to court so that they could change into street clothes. (*Id*. at ¶ 56.) When Johnson entered the intake area, Cartagena was sitting on a bench. (*Id*. at ¶ 57.) Johnson saw him and became visibly upset. (*Id*.) She explains that she walked around the intake desk, away from Cartagena. (*Id*.) Moran, who happened to be in intake at that time, saw Johnson become upset and opened the door to Dayroom 3. (*Id*.) Johnson explains that she went into the dayroom and closed herself into a female holding cell. (*Id*.) Johnson and Cartagena did not speak to one another or have any physical contact during this encounter. (*Id*. at ¶ 58.) Schmaling, Wearing, Barker, and Schulman were not involved in this encounter, and none of them remember ever being made aware of the encounter. (*Id*. at ¶ 59.)

Johnson had no other encounters with Cartagena at the jail. (*Id*. at ¶ 62.) She was transferred out of the jail about five days after this encounter. (*Id*. at ¶ 61.)

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the

5

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

In their opening brief the defendants argue that the court should grant summary judgment in their favor, in part because Johnson failed to exhaust the available administrative remedies before she filed her lawsuit. Following Johnson's response to their motion, and in an effort "to expedite this case, simplify the issues and avoid unnecessary cost and/or delay," the defendants waived their exhaustion defense. (ECF No. 52 at 5.) Accordingly, the court will address only the defendants' arguments on the merits.

Johnson contends that the defendants violated the Constitution by failing to protect her from a substantial risk of harm when they allowed her to encounter her rapist at the jail while on the elevator and while at intake prior to be taken to court. At the time of the encounters Johnson was a pretrial detainee, so to prevail on a claim that the defendants failed to protect her she must prove that the injury she suffered was objectively serious and that the defendants acted with deliberate indifference to her safety. *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Johnson has described extreme emotional suffering as a result of her encounters with Cartagena, which is sufficient for a reasonable jury to conclude that she suffered an objectively serious injury. Therefore, the court's analysis will focus only on whether the defendants acted with deliberate indifference to her safety.

The Supreme Court has explained that a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. It is not enough for Johnson to show that the defendants were negligent or even grossly negligent in response to the risk she faced; she must show they "acted with the equivalent of criminal recklessness." *Fisher*, 414 F.3d at 662. In fact, "if [the defendants] responded reasonably to the risk, even if the harm ultimately was not averted," they will not be liable because "the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Id.* (quoting *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)).

Johnson was permitted to proceed on a claim that the defendants acted with deliberate indifference when they failed to place Cartagena on her no-contact list when she first requested that they do so. (ECF No. 8 at 5.) The defendants explain that the primary purpose of the no-contact list is to ensure that certain inmates are not housed in the same dayroom. There never was a danger of Johnson and Cartagena being housed in the same day room because men and women are housed on different floors.

To the extent no-contact orders serve a purpose *other than* determining housing assignments, the defendants concede that, while officers make every effort to keep inmates with no-contact orders apart, the need to periodically move inmates within the jail, or from the jail to the court and back, may result in brief encounters (albeit encounters in which both inmates are being escorted by officers), including in an elevator or at intake at the jail. (ECF No. 52 at 10.) As such, even if the defendants *had* added Cartagena to Johnson's no-contact list when she originally requested, it would not have prevented her two encounters with Cartagena. (*Id.*) Regardless, no reasonable jury could conclude that, when a no-contact order is in place, *any* failure to prevent contact between the two inmates, no matter how brief, is deliberate indifference.

To address the risks associated with inmates with a no-contact order briefly encountering one another at the jail, officers always escort inmates who are outside of their housing units. (ECF No. 52 at 10.) The presence of an escort will not eliminate all risks of harm, but eliminating all risks is not what the Constitution requires. The

Constitution requires only that officials employ reasonable measures to abate the risks. *Farmer*, 511 U.S. at 847. Given the administrative needs of the jail, a reasonable jury could only conclude that the practice of officers escorting inmates through the jail is a reasonable measure to abate the risks associated with inmates with no-contact orders briefly encountering one another while moving through the jail.

Of course, there may be instances (such as this one) where the presence of an escort may not be a reasonable measure to abate the risk of harm associated with a brief encounter between two particular inmates. As Johnson explains, she was harmed by the mere sight of Cartagena, and the presence of an escort did nothing to address that harm. In circumstances such as those, where mere visual contact poses a substantial risk of harm to an inmate, a prison official will be liable only if he knew an inmate faced a substantial risk of encountering a certain inmate and failed to take reasonable steps to abate the risk of an encounter. *See, e.g., Farmer*, 511 U.S. at 847; *see, e.g., Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

With regard to the first encounter on the elevator, Johnson provides no evidence suggesting that the defendants knew she faced a substantial risk of encountering Cartagena on the elevator on June 5, 2012. The evidence shows that Johnson and Cartagena had court appearances scheduled on the same day, at roughly the same time, in two separate cases. The defendants did not schedule the court hearings, and Johnson provides no evidence demonstrating that the defendants knew Cartagena and Johnson

were both scheduled to go to court at roughly the same time, let alone that they both would be riding the elevator at the same time.

In fact, the defendants state that they had no knowledge of Johnson's concerns about Cartagena. Johnson asserts that she wrote the defendants letters and grievances explaining why she wanted to have no contact with Cartagena, but she provides no evidence to suggest that the defendants received those grievances. *See Jones v. Drew*, 221 Fed.Appx. 450, 454 (7th Cir. 2007). Johnson also asserts that she spoke to Moran about her concerns of encountering Cartagena and that Moran told her it would never happen because they would never be in the same area in the jail (ECF No. 46 ¶ 4), undermining her claim that Moran *knew* she faced a substantial risk of encountering Cartagena.

It is possible that Moran could have done more than she did to eliminate all risks of unscheduled encounters between Cartagena and Johnson—for example, maybe Moran could have checked the court transport lists daily or notified all officers responsible for transporting Johnson to be on the lookout for Cartagena. "[B]ut proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior…. [T]he corrections officer must have acted with the equivalent of criminal recklessness." *Id*. (citations and internal quotations omitted). Because Johnson provides no evidence suggesting the defendants knew she faced a substantial risk of encountering Cartagena on the elevator, the defendants cannot be held liable for failing to prevent that encounter.

The second encounter (on August 12, 2015) is different. By that time Johnson and Cartagena were on each other's no-contact lists and were going to court for the same case. Given that both Johnson and Cartagena needed to change into street clothes before being transported to the courthouse, a jury could reasonably conclude that *somebody* knew that Johnson faced a substantial risk of harm in encountering Cartagena in intake at the jail. But Johnson has provided no evidence suggesting *the defendants* knew she faced a substantial risk of harm in encountering Cartagena in intake.

The defendants state that they did not know Johnson was scheduled to testify at Cartagena's trial, let alone that she was being moved to intake while he was waiting there. Johnson asserts that she told the on-unit staff officer and the court bailiff that she was afraid of encountering Cartagena in intake, but she does not assert that she said that to any of the defendants. Moran happened to be in intake when Johnson arrived, but she asserts that she did not know Johnson was coming and so could not have prevented the encounter. Johnson provides no evidence to rebut Moran's assertion. Because the defendants did not know that Johnson faced a substantial risk of harm in encountering Cartagena at intake, they are entitled to summary judgment on Johnson's claim arising out of the August 12, 2015 incident.

Even if Johnson had named as defendants the on-unit staff officer and the court bailiff (the only two individuals who had actual knowledge of the risk Johnson faced in encountering Cartagena in intake), her claims against them would have failed. According

to the defendants, Cartagena was removed from his housing unit at 8:08 a.m. to be escorted to court for his trial. (ECF No. 53 ¶ 54.) Johnson was removed from her housing unit more than an hour and a half later, at 9:46 a.m. (*Id*. at ¶ 55.) Johnson explains that, at her request, both the on-unit staff officer and the bailiff radioed intake to let them know Johnson was on her way. (*Id*.) Johnson asserts that both officers told her it was all clear (she does not identify who told those officers it was clear). (ECF No. 45 at ¶ 21.) As was required by jail policy, an officer escorted Johnson from her housing unit to the intake area. Unfortunately, the area was *not* clear. Johnson immediately became upset upon seeing Cartagena, and Moran, who happened to be in the area, opened the door to the dayroom so Johnson could move away from Cartagena.

Accordingly, the only reasonable conclusion a jury could draw is that the on-unit staff and bailiff employed reasonable, although unsuccessful, measures to prevent Johnson from encountering Cartagena. That is all the Constitution requires.

Finally, Johnson argues that she should not have been placed in a holding cell adjacent to Cartagena's, where he was free to taunt her and threaten her. However, the holding cell is located at the courthouse, not at the jail. Johnson does not provide evidence that the named defendants were responsible for placing her in that cell, that they knew she would be placed in that cell, or that they knew Cartagena was taunting her through the cell walls. As previously explained, jail officials "are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

12

Because none of the defendants participated in this alleged violation, they are entitled to summary judgment on this aspect of her claim.

It is unfortunate that Johnson encountered Cartagena as she did. Regardless, no reasonable jury could conclude that the deliberate indifference of the defendants led to those encounters. Accordingly, the court finds that the defendants are entitled to summary judgment.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 29) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **DISMISS** this case and enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil

Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 16th day of November, 2018.

*[signature: William E. Duffin]*
WILLIAM E. DUFFIN
U.S. Magistrate Judge